## T. C. Robinson v. Benton Sharp et al.

1. PRACTICE—*Where Reviewing Court Will Not Disturb Finding of the Chancellor.*—Where the evidence is heard by the chancellor a reviewing court will not disturb his finding, except where the record discloses that the finding is clearly and palpably against the evidence.

2. ATTORNEY AND CLIENT—*Burden of Proof as to Equity of Transaction.*—In matters of contract between attorney and client the greatest fairness is exacted, and the burden of proof as to the fairness, adequacy and equity of the transaction is upon the attorney; and upon his failure to make such proof, courts of equity will always, at the instance of the client, treat the transaction as one of constructive fraud and set aside the contract.

Bill to Set Aside a Contract.—Appeal from the Circuit Court of Fulton County; the Hon. JOHN J. GLENN, Judge presiding. Heard in this court at the November term, 1901. Affirmed. Opinion filed June 20, 1902.

CHIPERFIELD & CHIPERFIELD, attorneys for appellant.

HARRY M. WAGGONER and LUCIEN GRAY, attorneys for appellees.

MR. PRESIDING JUSTICE BURROUGHS delivered the opinion of the court.

This was a bill in chancery, filed in the Circuit Court of Fulton County on April 11, 1901, by appellees, Benton Sharp and Murray Sharp, against appellant, T. C. Robinson, setting up that appellees' sister, Carrie S. Crabel, departed this life on December 25, 1900, leaving them and their sister, Lilly McPherson, as her only heirs at law; that on December 3, 1900, one J. B. Snedeker was duly appointed administrator of the estate of their deceased sister, and he is discharging the duties as such; that when their sister died she held three policies upon her life which were issued to her by the New York Life Insurance Company of New York, aggregating the sum of $7,000, and payable to her estate; that shortly prior to her death appellant, as her attorney, and at her request, examined said insurance policies, and informed her and appellee Benton Sharp, that they were valid; that shortly after her death appellees employed appellant as their attorney, to look after their interests in the estate of their deceased sister, and after he was employed he informed them that it was doubtful whether said policies could be collected, for the reason that there existed a serious doubt about the validity of the same; that he urged appellees to make arrangements with him to collect the money due on the policies for a compensation conditional upon his succeeding, and then told them that the usual charge of attorneys for making such collections was one-half of the amount collected; that having implicit confidence in appellant as their attorney, and believing that he had truthfully advised that there was some doubt as to the validity of the policies, and truthfully informed them that attorneys usually obtained one-half for collecting in such cases, appellees were each thereby fraudulently induced to enter into a written agreement with appellant on December 28, 1900, whereby they assigned to him one-half interest in the policies in consideration that he would collect the money

due the estate upon them; that, in fact, there was no doubt whatever concerning the validity of the policies, nor was it usual for attorneys to be allowed one-half for collecting such, all of which was well known to appellant, but unknown to appellees, when the written agreement was made; that the written agreement, by reason of the excessive amount therein given to appellant for his services, is unfair and inequitable to appellees, and for that reason it is void as to them, and ought, in equity and good conscience, to be set aside and canceled by the court; that appellees are willing to pay, and here offer to pay appellant any sum of money which he is legitimately entitled to receive for the services rendered them as their attorney; that on March 4, 1901, appellant brought suit against appellees in the Circuit Court of Fulton County, Illinois, on the law side thereof, and therein claims from them the sum of $3,500, under the terms of said written agreement, for the services rendered by him in the collection of the policies; that appellees are unable, in the suit at law, to make a complete and adequate defense to appellant's claim, based upon the written agreement, by showing the false statements and misrepresentations made to them by appellant, to induce them to make it, and by which they were fraudulently induced to enter into the same; that appellees are not indebted to appellant in the sum of $3,500, but are the victims of confidence misplaced in him.

And the bill prays that the written agreement be set aside and canceled, and for that purpose, that appellant be required to produce same to the court; that he be restrained from further prosecuting the suit at law thereon, and for general relief.

Appellant answered the bill admitting the death of Carrie S. Crabel; her leaving the heirs as stated; that J. B. Snedeker is administrator; that deceased held insurance policies as stated, which were payable to her estate; but denies that Lilly McPherson has any interest therein as heir or otherwise.

Admits that on December 28, 1900, appellees executed

and delivered to appellant the written agreement mentioned in the bill, and that they then employed him as their attorney to look after their interest in the estate of their deceased sister, but denies that at any time after or before he was so employed, appellant advised them that the validity of the policies were in doubt, or informed them that the usual charge of attorneys for making collections in such cases was one-half the amount collected.

Alleges that the agreement made with appellant and appellees which is mentioned in the bill, is valid and binding between them and ought not to be set aside nor canceled, for the reason that it was fairly entered into. Admits that appellant commenced suit upon the agreement as alleged, but denies that appellees will be unable at law to make or avail themselves of all legal or proper defenses thereto, and states that there exists no reason in law or in equity why appellee can not make, on the law side of this court, any and all defenses to the suit which he should be permitted to make in a court of chancery. Alleges that on December 28, 1900, at the earnest solicitation and request of appellees, appellant entered into an agreement in writing with them, whereby they assigned to him one-half interest in the policies of insurance aforesaid; that prior to that date appellant had never been the attorney for appellees or either of them, nor had he, before the delivery of said written agreement to him by them, ever agreed with them or either of them, to represent them, or either of them, as their attorney in any manner whatsoever; that said agreement was made when the relation of attorney and client did not exist, and when appellant had a perfect legal right to make any contract whatsoever with appellees.

The answer further alleges that Carrie S. Crabel was, at the time the policies were written, a sick and diseased person, and presumably incompetent to pass a proper medical examination to be accepted as insurable, and for that reason there was, at the time the written agreement in question was made, a serious doubt as to whether the policies of insurance could be collected; that after the agreement was

made, appellees, with full knowledge of all the facts, ratified and affirmed the same.

And the answer also states that appellant submits to the court that every and all the matters in the bill mentioned and complained of, are such as may be tried and determined in a court of law, and with respect to which appellees are not entitled to any relief from a court of chancery, and asks that appellant shall have the same benefit of this defense as if he had demurred to the bill.

A general replication was filed to the answer, and the cause was heard by the chancellor upon the pleadings and evidence taken in open court before him, and he entered a decree finding the facts stated in the bill were true; that the equities of the case were with appellees; and that while the relation of attorney and client existed between appellant and appellees, they, on December 28, 1900, entered into the written agreement as alleged in the bill, which agreement is as against appellees inequitable and unreasonable, and for that reason is decreed to be set aside and for naught held or esteemed; that appellant deliver the written agreement to the clerk of the court to be by him canceled, and that appellant be enjoined from further prosecuting the suit at law against appellees upon said agreement.

It is also stated in the decree that appellant should have a reasonable compensation from appellees for his services in collecting the money on the policies, as by their bill they have offered, and that the court therefore offers to hear evidence to ascertain what would be a proper compensation for such services, but that appellant declined and refused to make proof in that behalf; and the decree orders that the written agreement be set aside and for naught esteemed; that appellant deliver it to the clerk of the court to be by him canceled; and that he be enjoined from further prosecuting the suit at law thereon.

From that decree appellant appeals to this court and urges its reversal on the alleged grounds that the finding is against the evidence and the equities of the parties; and that the bill ought to have been dismissed for want of

jurisdiction in chancery, as appellees can make as complete and adequate a defense to the validity of the agreement on the law as well as the chancery side of the court.

The evidence, while somewhat conflicting on the question of whether the written agreement between the parties was made after or at the time the relation of attorney and client was created, in every other respect, substantially sustains the material allegations of the bill.

The contention of appellant that the evidence did not warrant the finding of the court, and does not sustain the decree rendered, is without force, for the reason that the evidence was heard by the chancellor in open court, and was conflicting only as to whether the relation of attorney and clients was created between the parties before or at the time the written contract was executed. The learned chancellor found in favor of appellees on that question and the record contains ample evidence to sustain the finding. Where the evidence is heard by the chancellor, a reviewing court will not disturb his finding except where the record discloses that the finding is clearly and palpably against the evidence. Fabrice v. Von der Brelie, 190 Ill. 460, and cases there cited.

In matters of contract between attorney and client the greatest fairness is exacted, and the burden of proof as to the fairness, adequacy and equity of the transaction is upon the attorney; and upon his failure to make such proof, courts of equity will always, at the instance of the client, treat the transaction as one of constructive fraud and set aside the contract. Jennings v. McConnel, 17 Ill. 148; Morrison v. Smith, 130 Ill. 304; and Willin v. Burdette, 172 Ill. 117.

The contention of appellant that the court of chancery was without jurisdiction in this case because appellees could have successfully defended the action at law for the fraud claimed to have been practiced upon them by appellant in inducing them to enter into the written agreement, is likewise without force, for the reason that the fraud which they claim induced them to execute the agreement consisted in the misrepresentations and false statements made

to them by appellant, and which they were induced to believe on account of the confidence they reposed in him as their attorney, and that such misstatements and representations were concerning the inducement to make the agreement, and in such cases a court of chancery, and not of law, is the proper forum to annul the contract. Papke v. Hammond Co., 192 Ill. 631.

Finding that the evidence supports the finding and that the court had jurisdiction to render the decree, the latter will be affirmed.